The cause stood further continued for advisement; and at mis term the opinion of the Court (except the Chief Justice, who had been of counsel for one of the parties) was delivered as follows, by
Sewall, J.
The contract declared on by the plaintiff, W. B., in this case, and proved at the trial, is a conditional promise on the part of the defendant, J. B., who engages by his promissory note to pay the plaintiff, at a day stipulated, the sum of nine thousand dollars, he procuring a good deed with warranty of his homestead estate, agreeable to bond, for which the sum is to be paid. And by the bond referred to, W. B., reciting that he has that day, viz. October 16, 1804, sold to the defendant his homestead farm, &c., and has taken security for the sum to be paid on the 25th of March then next, the bond is on condition that he shall then produce a good and lawful warranty deed of sale thereof, &c.
At the trial, the plaintiff was holden to prove, on his part, notwithstanding the mutual security possessed by the defendant, a substantial performance of the condition expressed in the bond; and it was understood that a failure therein would operate to discharge the defendant.
From the report of the evidence, it appears that the effort for the completion of this contract was wholly on the part of the plaintiff; and whether he has sufficiently entitled himself to insist on the payment of the purchase money promised by the defendant, is the general question reserved upon the verdict taken for the plaintiff.
The deed, distinguished at the trial as the second deed, is, in the opinion of the Court, sufficient in form as a deed with warranty *54 The objection then suggested and * Urged, upon certain provisions of the statutes of Rhode Island, in which state a part of the bargained premises lies, has been tacitly relinquished in tile further argument upon the motion for a new trial.
Whether this deed was procured at the day stipulated, in the sense of the contract, was left to the jury at the trial, with a direction to find for the plaintiff, if they were satisfied that the deed was executed by the plaintiff on the 25th of March, the day stipulated, and he was then ready to deliver it, and that a tender thereof on that day had been prevented by any wilful contrivance or evasion of the defendant (a), or in consequence of any agreement of the parties, that the deed should be delivered and accepted on the next day, without prejudice to their contract (1). The verdict is therefore conclusive as to these facts, and the jury have found specially, that there was evasion on the part of Jonathan Borden, so that he might not receive the second deed on the day appointed, and also on the next day.
It may admit of some doubt whether the condition of the con tract in the case at bar requires an actual tender of a deed (2). The words of this contract are, “ if he shall procure; ” which may be reasonably construed, if he shall have ready to he delivered; besides that the delivery of the deed was secured by the bond of the plaintiff. But supposing a tender necessary, proving himseli ready with a deed, which would have been tendered, if the defend ant had not avoided it by evasive contrivances, seems to be equiva lent to a tender ; and such is the opinion of the Court on this point
The principal difficulty is upon the question, which was rather re served than decided at the trial, whether the deed, with which the plaintiff was prepared, and which the defendant might [*75 ] have received, if he had not * chosen to avoid it, was a good deed, as depending upon the right and authority of the grantor to convey the bargained premises.
The plaintiff was himself the grantor, and is understood to have derived his title to the premises, which he undertook to convey, under the will of one William Durfee, deceased. And this title is supposed to have been impaired or encumbered, lstly, by the extent of an execution to satisfy a judgment recovered by Jeremiah Sim ■ mons against Benjamin Durfee, administrator of the estate of Wil Ucm Durfee, levied on the 9th of January, 1801, on a part of the *55 bargained premises lying within this state; 2dly, by certain attachments stated in the report. And though these claims affect only a part, and comparatively a small part, of the bargained premises, yet if there results from thém an unavoidable defect of title in the plaintiff, as to the parts of the estate comprised in those items, this circumstance ought to operate a discharge of the defendant from his whole contract, which respects the entire premises; and he is not to be compelled to accept of a partial performance by the plaintiff.
A Court of chancery, on bills for a specific performance, or for a discharge, and a restoration of the purchase money, in cases of contracts for the sale and purchase of lands, exercises a more enlarged, and perhaps a more beneficial jurisdiction, than this Court is competent to. There, when the decree depends upon a question made of the title of the vendor, it is usual to enforce the contract, if the vendor can at the time of the decree, and even when this has been postponed for the purpose, make a good title in the premises bargained to be conveyed; although the title was liable, at the time stipulated for the performance of the contract, to some objection or uncertainty. And it is only when some irremediable difficulty, or, as it is expressed, some solemn doubt, exists, materially affecting the title, that a Court of chancery will not compel a performance. The * cases of Vernon vs. Stephens (3), Lang- [ * 76 ] ford vs. Pitt (4), and of Pincke vs. Curtis (5), are decisions to this effect, and in those cases many other authorities are cited. But this Court, from its incompetency to afford a more specific relief, will exercise a suitable strictness in considering objections of this kind; which, if allowed at all, must operate to dissolve a solemn contract, it may be upon a mere punctilio of time, and where the party availing himself of the objection is liable to no real injury (a).
The judgment recovered by Jeremiah Simmons, and his extent, and the pendency of a writ of error for the reversal of it in the Supreme Court of this state, were facts known to the defendant at the time of his bargain; and the suspension of the payment of the consideration money, and the particular expression of the plaintiff’s procuring a deed, seem to have had a reference to the apprehensions of the parties respecting the supposed encumbrance, or defect of title, as existing at the time of their contract. On the other hand, it appears that the seisin and possession of William Borden, claiming *56 under the will of William Durfee, had never been interrupted by the extent of Simmons’s execution; that the occupation of the purchaser would not have been delayed by this supposed defect of title ; and that the administration of Benjamin Durfee, against whom, in that capacity, Simmons had recovered his judgment, had been, before the date of this contract, reversed and annulled upon an appeal allowed to William Borden, the plaintiff in this action. But what is perhaps still more essential in estimating this apprehended defect of title, it also appears that the deceased William Durfee had his domicil, at the time of his death, in the state of Rhode Island, that the administration was there granted to Benjamin Durfee, and not within this state.
[ * 77 ] * Upon these facts, appearing from the evidence at the trial, and the documents referred to in the report, we are to determine the legal effect of the title under Simmons’s extent, how far it could operate to prevent the plaintiff in this action from giving or procuring a good deed with warranty, of the entire premises he had bargained to the defendant. And in the first place, this supposed title in Simmons had no effect to delay the occupation of the purchaser, or to defeat any deed which might have been given by William Borden, as being the deed of a person out of possession ; and secondly, whatever might be the effect of the repeal of Benjamin Durfee’s administration, in avoiding all mesne acts affecting the estate of William Durfee, it seems to be decisive, in a question of the legal validity of a title claimed by Simmons’s extent to satisfy a judgment recovered against Benjamin Durfee as administrator, levied upon real estate lying within this commonwealth, that his administration, such as it was, had been granted in the state of Rhode Island. Such an administration, as to actions brought within this state, and especially for the purpose of charging lands or tenements lying within this state, by suffering judgments to be recovered against him in the capacity of administrator, is a nullity. To this purpose, such real estate is not in the hands, or under the administration of a person deriving his authority under a foreign jurisdiction. According to a late decision of this Court, an administrator not appointed in this state can maintain no action, in his capacity of administrator, in the Courts of this state (6). And t should follow, a fortiori, that he is not liable in that capacity in any action to be *57 brought against him within this state, for the purpose of subjecting the real estate of the deceased to be taken in execution.
The argument supposes the judgment recovered by Simmons, and the extent to satisfy it, to be absolutely * void; [ * 78 ] and that a writ of error is not necessary, or essential to restore the rights of the parties interested. But upon the suppcsition that a writ of error would be necessary, if there is a legal certainty that a judgment recovered under these circumstances must be reversed, and the restoration of the right and title, clear of the supposed encumbrance, is inevitable, the question of the defect of title by means of this extent, how far it is a reasonable objection to the deed of William Borden, must be the same; that it was a good deed, notwithstanding the objection (a).
Respecting the other objection to the deed in question, stated upon the effect of certain attachments in suits brought against William Borden, it may be observed, that on the 25th of March, the time appointed for the completion of this contract, and supposing these suits maintainable, the attachments were rather approaching than existing encumbrances, and never could produce, in any event, unless by the consent or wilful neglect of the purchaser, an unavoidable defect of title. And after the offer, proved at the trial, of permitting the defendant to retain to the amount of those attachments, and considering his equitable right of retaining to that amount, the attachments proved did not constitute a legal and sufficient objection to the validity of the deed prepared by William Borden.
In the case of Newman vs. Rogers (7), decided by Lord Chancellor Loughborough, upon a suit for the purchase money due on a certain contract, for the sale of a reversionary interest in land, the purchaser objected the unexpected amount claimed upon a mortgage of the premises to be conveyed, exceeding the sum provided for it in the articles of agreement between the parties; and it appeared that on the suggestion of this claim, the vendor had offered the ven *58 dee to permit him to retain the full amount claimed, un- [ *79 ] til the sum due could be ascertained. * The chancellor determined the objection to be unfounded, that he had an equitable right to retain to the amount claimed, and that the offer to this purpose left the purchaser without any excuse.
In the case of an agreement for a marriage settlement to convey lands, and to covenant against encumbrances, when there is a known encumbrance upon the estate, equity will not enforce a discharge of it, or a security against it, before the parties are actually prejudiced by it.
In the cases cited, the encumbrances afterwards objected to the title, were within the notice of the parties at the time of their agreement, and were provided against by special clauses in the articles established between them. And in the case at bar, there is a circumstance entirely equivalent, respecting an encumbrance by attachment ; that it is an event always legally possible, and beyond the control of the vendor, and must therefore be understood to be contemplated in every contract for the sale of lands to be conveyed at a future day. Against a contingency of this nature, a right to retain to the amount claimed, is a suitable and sufficient indemnity. To this consideration may be added the inconvenience of any other rule, opening a mode of escape, which a party, inclined to avoid a contract for the purchase of real estate, might easily avail himself of, without detection (a).
In the opinion now stated of the objection from the attachments, no regard has been had to the evidence of the contrivance and design of the defendant in this case, in exciting and directing the attachments. The evidence to this purpose was not conclusive, and the jury have not expressly decided upon the fact. It is unnecessary, therefore, to decide the question arising in that view of the case.
Upon the other objection to the verdict, from a supposed cause of challenge to a juror sworn in the trial, it is observable that before the trial commenced, one of the jury, the same person [ * 80 ] who is now charged by * the affidavit, was excepted to for the same cause, and the truth of the fact was then in quired into according to the course directed by the statute; the juror objected to was examined upon his oath, and he was then adjudged to stand indifferent in the cause. It is also to be considered, that the principal questions arising in the cause are, by the course taken at the trial, questions of law altogether; and the facts de *59 cided by the jury respect only the formality of a tender of the deed at the day appointed; when it appears that the deed, now adjudged to be a lawful, good and sufficient deed, was prepared and in readiness, if it was not actually tendered in form; and when it is not pretended that the vendee, now moving for a new trial, was ready with his payment, if the deed had been fully delivered, and accepted by him. If this motion is in any degree an application to the discretion of the Court, this is a case in which they ought not to interfere, to set aside a verdict upon an objection of this kind. But after all, it is only oath against oath, and respecting a question once legally decided.
Upon the whole, the decision of the Court is against granting a new trial for either of the reasons suggested; and judgment is to be entered according to the verdict.

 Jones vs. Barclay, 2 Dougl. 684. — Phillips vs. Fielding, 2 H. Bl. 123. 5 East, 202. — Sed vide Frazier vs. Cushman, 12 Mass. 277. — Boyd vs. Stone, 11 Mass. 349, and notes to 3d ed.

 1 Esp. Rep. 54, 55. [Cuff vs. Penn, 1 M. & S. 21 —Warren vs. Stagg, 3 D. & E. 391.]

 4 Brown. Chan. Rep. 429, Pincke vs. Curtis.

 2 P. Will. 66.

 Ibid. 630.

 4 Bro. Ch. Rep. 429.

 Cornish vs. Rowley, 1 Selw. N. P. 175. — Berry vs. Young, 2 Esp. c. 640. — Lang vs. Gale, 1 M. & S. 111. 2 Esp. c. 640. — Wilde vs. Fort, 4 Taunt. 344. — Hagedon vs. Lang, 1 Marsh. 514. Sugd. Vend. 355. 7th Ed.

 Ante, Vol. 3. P. 514. Goodwin vs. Jones. [Trecothick vs. Austin, 4 Mass. 16.— Dickinson vs. M'Craio, 4 Rand. 158. — Thomson vs. Wilson, 2 n. H. R. 291.— Wilkinson vs. Leland,2 Peters, 655. — Buffs’s Admr. vs. Price, C. & N. 68. Anonymous, 1 Hayw. 355 —Perkins vs. Williams, 2 Root, 462. — Morell vs. Dickey, 1 Johns. Ch. 153. — Fenwick. vs. Sears, 1 Cr. 259.] — Mormptin vs. Tilley, 3 Day, 303

 A Court of equity will not compel a purchaser to accept a title, unless the vendor can show it is free from all doubt, whether as to matter of fact or matter of law. What may be sufficient foundation for judicial doubt, must in some degree depend on the discretion of the judge. But that is not an arbitrary, capricious discretion: it must be regulated upon grounds that will make it judicial. White vs. Damon, 7 Ves. 35.— Cowper vs. Cowper, 2 P. Will. 753. — In attempting, says Sir Thomas Plumer, in Price vs. Strange, to lay down a rule upon the subject, I should say that a purchaser is not obliged to take a property, which he can only acquire in possession, by litigation and judicial decision.” 6 Mad. 159. It seems to be the better opinion that a court of law will regard equitable defects in a title. Maberly vs. Rubins, 5 Taunt. 626 — Elliott vs. Edwards, 3 B. & P. 181. Sugd. V. & P. 226. But it will not take notice of doubtful titles, and it will adjudge a title to be good or bad without inquiring whether it be marketable or not. Maberly vs. Robins, ubi sup. — Romilly vs. James, 6 Taunt. 274. — Camfield vs. Gilbert, 4 Esp. C. 221.

 4 Bro. Cha. Ca. 391.

 Barnard vs. Fisher, 7 Mass. 71. — Brown vs. Bellows, 4 Pick. 179. — Quaere wheth er, at law, a purchaser is bound to accept an estate, which is under attachment ? Vid Osbaldiston vs. Askew, 1 Russ. 160.