## MUSSEY vs. WHITE & AL.

The preparation of an alphabetical list of voters, previous to the annual meeting of a town for the choice of its officers, is not necessary to the validity of the election; the *Stat.* 1821, *ch.* 115, being in this respect merely directory.

Where the record of a town states that certain persons were *chosen* to a certain officer without saying whether by ballot or otherwise, the presumption of law is that it was in the *legal* mode.

Where the inhabitants of a town, at their annual meeting, voted that their selectmen should also be assessors, but did not elect them such by *ballot*, as the statute requires, and they were sworn into both offices; and afterwards, at an adjournment of the same meeting, they were regularly elected assessors by ballot, and proceeded to discharge the duties of their office as such, but were *not sworn again;*—it was holden that their neglect to be sworn after the *valid* election was a refusal of the office; but that their proceedings might be supported as the doings of selectmen, acting under the statute, in a vacancy of the office of assessors.

If one of the inhabitants of a town absent himself, in order that he may not receive personal notice from the assessors to bring in a list of his taxable estate, where the known usage was to give notice in that method, he cannot afterwards object to the legality of his tax on that account.

The words " *In the name of the State of Maine,*"—and the sentence beginning with the words—" *it being this town's proportion of a tax,*" &c. in the form of the warrant for collecting taxes, in *Stat.* 1821, *ch.* 116, *sec.* 17, are matters of form only, the omission of which does not vitiate the warrant.

It is not necessary to the validity of a warrant for the collection of taxes, that it be *delivered'* to the collector during the year for which he and the assessors were elected; it being sufficient if they made and signed it while in office.

THIS was trespass of assault, battery, and false imprisonment, brought against the assessors of the town of *Standish*; who pleaded the general issue, and also justified under due proceedings against the plaintiff for non-payment of his taxes, which was traversed, and issue joined thereon.

At the trial, before *Weston* J. the plaintiff proved his arrest and imprisonment by one *Joseph Bayley*, the collector, under authority of a paper purporting to be a warrant to him, signed by *White* and *Tompson*, the defendants; and *Bayley* appeared to have been duly chosen and sworn as constable and collector of the town of *Standish*, at a meeting holden in *March* 1821, *unless* the want of proof of an alphabetical list of voters having been prepared for such meeting, rendered the same invalid.

The plaintiff also proved his detention in prison till he paid the sum of three hundred and twenty-four dollars and seventy cents.

To support their justification the defendants proved by the town record that they, and *William Hasty, Jun.* were elected as selectmen and assessors of *Standish*, as there stated, at a meeting of the inhabitants thereof holden *March* 22, 1821, but whether elected *by ballot* or not, did not appear. It was objected by the plaintiff that no proof was offered that an alphabetical list of voters was prepared before, or used at, this meeting, but the Judge, for the purposes of this trial, ruled that such proof was not necessary.

The defendants further proved that on the 24th day of *March* 1821, *Tompson* was sworn as *selectman and assessor*; and that on the 26th day of the same month *White* and *Hasty* were also sworn in the same manner;—and that afterwards, at an adjournment of the meeting above mentioned, holden on the 30th day of *April* 1821, *Tompson*, *White* and *Hasty*, were elected assessors by *ballot*, but it did not appear that they were afterwards sworn *as assessors*.

The assessors did not give to the plaintiff any personal notice to render to them any list of his rateable polls or estate; nor did they post up any general notification requiring the inhabitants of *Standish* so to do. But it was proved by the defendants that it was the practice of the assessors of *Standish* to give personal notice to the inhabitants for that purpose; that such was the course they adopted that year;—and that they did give notice to several persons, and *attempted* to notify the plaintiff. And the jury, upon being requested by the Judge to answer to this fact, found that the assessors used due diligence to give notice to the plaintiff, but that he went away and remained absent for the purpose of avoiding it.

The defendants also exhibited a book on which was written at some unknown time, the words " *Valuation* 1821," but it had no other title. It contained a schedule of taxable estates of inhabitants of *Standish*, and among others of the plaintiff, whose real estate was set down at $2171, against which, in a column headed " *faculty*," was put the sum of $130 26. In the same book was what the defendants exhibited as an assessment of taxes against the

inhabitants of *Standish.* It was not so entitled; but the words " *State, county and town tax for the year* 1821" were legibly written on the first page of it. At the end of the book was written " *Standish, August* 27, 1821, *William Tompson, Mark White, Assessors.*

No copy of this valuation was lodged with the town clerk; but it was proved that the assessors had an office in which they transacted their official business, which was generally known to the inhabitants of *Standish;*—that the valuation and assessment were lodged in that office, open to public examination: and that the town clerk kept his papers in the same office, but transacted his business in a store kept in the room below. The jury, being requested by the Judge to settle this fact also, found that the valuation was seasonably lodged in the assessor's office, about the time it was made.

The warrant by which *Bailey* the collector arrested the plaintiff, though dated *August* 27, 1821, was not delivered to him till *October* 9, 1822, the day before the arrest; at which time it was delivered to him by *Tompson,* who was assessor for 1822, though *White* was not. But it was proved that when the assessors delivered the tax bills to the collector, the warrant was duly made out and ready to be delivered; but that by mistake they delivered to him the *commitment* of the bills, as it is termed, being a direction to collect the taxes, instead of the warrant of distress, without discovering the error till the collector informed *Tompson* of it on the day before the arrest. This warrant had but one seal; and it stated that the list following was an assessment on the polls and estates of the persons therein named, amounting to such a sum, contained in twenty eight pages, which they thereby committed to him to collect;—directing him to whom, and at what times to make payment of the monies collected; and to distrain the goods or chattels, and in want thereof the bodies of delinquents;—giving, in substance, the directions given in the statute; but not containing any *formal* command in the *name of the State,* nor referring to any statute, or reciting any prior proceedings, as the foundation of the authority given in the warrant. This warrant, the plaintiff insisted, was not conformable to law; and that the defendants had no right to deliver it to the collector so late as *October* 1822.

It was also proved that the inhabitants of *Standish* had assumed the defence of this suit.

The Judge hereupon directed the jury to find a general verdict for the defendants; reserving for the consideration of the whole Court the questions whether the evidence was competent or sufficient to support the justification, as to the points to which it was applied; and whether what the defendants omitted to prove was essential to their defence.

*Emery* and *Potter*, for the plaintiff, now took the following exceptions to the proceedings of the defendants, as disclosed by the evidence.

1. It appears that an alphabetical list of persons entitled to vote was not prepared previous to the town meeting for the choice of officers. This document is of vital importance to the order and purity of elections, and the law has recognized its value in these respects, by allowing no person to vote till it is ascertained that his name is on the list. *Stat.* 1821, *ch.* 115, *sec.* 15. *Wheeler v. Russell* 17 *Mass.* 258. *Springfield Bank v. Merrick* 14 *Mass.* 322. *Russell v. De Grand* 15 *Mass.* 35. These authorities shew that it is not in the power of the town to dispense with this necessary preliminary, because it would be against law. Such an agreement would be void.

2. The defendants, in *March*, were chosen selectmen and assessors, but not *by ballot* ; after which, in the same month, they were sworn. In *April* they were elected assessors by ballot, but not again sworn. If they acted as assessors under their election in *March*, that was void, not being by written ballot ;—if under the choice in *April*, their proceedings are void, they not having been sworn. The law authorizes selectmen to act as assessors only where the town neglects or refuses to choose, or they decline serving. But here the town did not neglect, but actually elected them ; and the same individuals being both selectmen and assessors, the capacity in which they acted could only be known by their own declarations, and by this evidence they assumed to act *as assessors.*

3. The assessors did not give notice to the inhabitants to bring in lists of their polls and taxable estates. If the plaintiff was absent

to avoid personal notice, this does not excuse the defendants, who should have done all in their power to make the notice public, by posting it up in public places in the town. Such an apology would not protect an officer neglecting to serve a writ on a trustee ; nor excuse a party bound to tender performance of a duty ; and it ought not to avail the defendants.

4. The valuation and assessment are not entitled as being of polls and estates in *Standish* ; and, for aught appearing on them, may have belonged to any other town. *Portland Bank v. Apthorp* 12 *Mass*. 252. *Thurston v. Little* 3 *Mass*. 429. 10 *Mass*. 105. And the former is illegal, as it includes "*faculty*" as a proper subject of taxation, which is incapable of pecuniary estimation, and is not enumerated in the statute.

5. Nor was any copy of the valuation and assessment lodged in the office of the town clerk or assessors, as the statute requires.

6. The warrant is not in the form prescribed by the statute. It was in the nature of a writ of execution, and ought to recite the authority on which it assumes to invade private property.

7. And it was not delivered to the officer for service till long after the offices of the assessors had expired, and so was no legal authority to him. It is for the interest of the State that the collector should have his warrant of distress delivered with his tax bill ; and any neglect of this duty in the assessors ought not to receive the protection of the law.

*Fessenden* and *Deblois* for the defendants, replied to the *first* of these objections that the record was conclusive evidence of the legality of the meeting. *Thayer v. Stearns & al.* 1 *Pick*. 109. 14 *Mass*. 320. And if not, yet it was not the duty of these assessors to prepare the list, but of their predecessors in office ; nor are these defendants liable in trespass for any neglects of duty but their own.

To the *second* they answered that it appearing of record that they were *chosen* assessors, the presumption of law is that the choice was legal, till the contrary appears. But if they were not chosen as the law directs, it is no choice ; and if after the election in *April* they were not sworn, it is a refusal of the office ; in either of which cases the statute devolves their duty on the selectmen,

who are "*declared and appointed the assessors.*" *Colman v. Anderson* 10 *Mass.* 105.

As to the *third* objection,—it ought not to avail the plaintiff, because the want of notice was occasioned by his own fault. If not, he might have had the proper remedy, by appeal to the Court of Sessions. *Borden v. Borden* 5 *Mass.* 67. *Doug.* 694. 4 *Cranch* 239.

To the *fourth* they said that the book was sufficiently entitled for all purposes intended by law, since its character and import could not be mistaken. And the sum set in the column under "*faculty*" would be found, on inspection, to be six *per cent.* of the value of the real estate, which is the legal *ratio* of taxation. But if otherwise, yet the defendants are not liable in *trespass.* *Wells v. Battelle* 11 *Mass.* 477. *Dillingham v. Snow* 5 *Mass.* 547.

The *fifth* objection they considered as settled by the jury. And as to the warrant,—they contended that the *substance* agreeing with the precedent in the statute, it was enough. A strict adherence to form in these summary proceedings is never required. *Cook v. Gibbs* 3 *Mass.* 193. *Wood v. Ross* 11 *Mass.* 271. *Commonwealth v. James* 1 *Pick.* 375.

And to the *last* objection they replied that the warrant being made and signed in due season, it was the property of the collector, who might lawfully take it wherever it could be found ; and delivery by the assessors was wholly unnecessary to give it force. Most of these objections, they observed, were altogether technical ; and it was important to the fiscal affairs of the State, and vitally so to towns, that they should not be suffered to prevail. Besides, the statutory provisions are multifarious, in some respects difficult clearly to comprehend, and devolving on assessors many embarrassing duties ;—and if sureties are with propriety said to be favorites with Courts, much more ought assessors to receive protection, when in the honest endeavor to discharge their duty.

MELLEN C. J. delivered the opinion of the Court.

Numerous objections have been stated and urged against the competency or sufficiency of the evidence offered and introduced

by the defendants by way of justification of their official conduct ; and these objections are relied on as the grounds of the plaintiff's motion for a new trial. The parties and their counsel have considered the cause as one of importance ; and as such we listened to the arguments with attention, and have examined most of the authorities which have been adduced, that we might be able to arrive at a conclusion satisfactory to ourselves. The plaintiff considers the cause important to him ; as intimately affecting his rights as a citizen, and his pecuniary interests. The defendants' view is also important to them in a pecuniary point of view ; and as public officers of their town, and they claim of the Court to view their official acts with all that indulgence which is due to honest intentions and anxious endeavors to perform their duty correctly ; although they may in some minute particulars have erred in judgment. Courts cannot grant favors to parties, but must decide their causes on legal principles. But in doing this, they may, and in many instances do, consider statute provisions as only directory. Numerous cases might be stated where the law directs an officer to perform a certain act, and subjects him to a penalty for its omission, without meaning to render all his other acts void. As an instance of this, we may refer to the law which requires town officers to take the oath of office within a certain time after being notified of their choice, under a penalty for neglect ;—still, if they take the oath after that time, their acts are not the less valid on that account. *Colman v. Anderson* 10 *Mass.* 105. Waiving, however, further preliminary remarks, we proceed to notice and examine the several objections which have been urged by the plaintiff's counsel.

The *first* is that at the town meeting holden on the 22d of *March* 1822, at which the defendants were elected into office, there was no alphabetical list of voters present, and that no such list had been previously prepared, according to the provisions of the acts of *Massachusetts*, of which the 1st, 14th, 15th, and 17th sections of the statute of this State, *ch.* 115, are a transcript. By those sections, viewed in connection, it appears that it was the duty of the assessors of *Standish*, as well as all other towns, on or before the 20th of *February* annually, to make out a correct alphabetical list of all inhabitants of their respective towns,

qualified to vote in the choice of town officers ; and a penalty not exceeding $200 is incurred by selectment or assessors, by neglecting their duty ;—and " that no person shall be permitted " to give in his vote or ballot, at any meeting for the choice of " town officers, until the person presiding at such meeting shall " have had opportunity to inquire his name, and shall have ascer- " tained that the same is in the list aforesaid, and shall have had " time to check the same,"—and any person wilfully voting con- trary to the above provisions incurs a penalty. The plaintiff contends that all the proceedings of the town meeting on the 22d of *March* 1821, were illegal and void ; inasmuch as such alpha- betical list had not been seasonably prepared by the assessors, and was not present at the meeting. As none had been made and prepared pursuant to law, of course none could legally be used at the meeting. The defendants' answer to all this is, that the neglect in the above particular was not their neglect ; but that of their predecessors, the assessors of 1820 ; for whose faults and nonfeasances they, the defendants, are not responsible. The question then is, as no list of voters had been prepared by the assessors of 1820, could or could not the inhabitants of *Standish*, legally warned and assembled in town meeting, proceed to the election of town officers, and the transaction of the necessary business of the town ? We think that a negative answer to this question would lead to incalculable mischiefs. If the principle contended for be correct, the town can never organize themselves or transact any town business for themselves or for the benefit of the county or State. These evil consequences are all avoided by considering the foregoing regulations as directory to the assessors, who, by their neglect of an assigned duty, have incur- red the statute penalty ;—and this is the only consequence. The town is not disfranchised, and its government dissolved. The provision in the 15th section seems predicated clearly on the idea that a correct list has been prepared, and is in the meeting, and open to the examination of the presiding officer, so that he can see the names of the voters and check them. And we cannot think it reasonable to give such a construction to that section as to subject a voter in a town meeting in *March* 1821 to a penalty,

because the moderator of the meeting had no list of voters in the meeting which he could inspect ; for the best of all reasons, namely, because the assessors of 1820 had illegally neglected to prepare one. Besides, the statute declares that the assessors shall make out correct alphabetical lists on or before the 20th day of *February*. Now, are all the transactions of the next annual meeting void, because the list was not correct ; there being several qualified voters in town whose names, by some means or other were not borne on that list ? The objection founded on such a principle cannot be sustained, and we therefore overrule it and pass to the next ; merely observing that we do not consider the cases cited from 14 *Mass.* 322, 15 *Mass.* 35, and 17 *Mass.* 281, as applicable in their principles ; they being all questions of illegal consideration.

The *second* objection is that the defendants were never duly sworn, and therefore never qualified to act as assessors. This at first appeared unanswerable ; and if it is so, it at once settles the case in favor of the plaintiff. By the record of the proceedings of the meeting on *March* 22d, it appears that a certain person was chosen moderator, and that the defendants and one *Wm. Hasty*, jr. were chosen selectmen and assessors. The record is silent as to the mode of choice, as to all four of those persons ; and we apprehend that this record thus far was made in the usual manner. And as by law the moderator, selectmen and assessors must all be chosen by ballot ; we must presume that the town proceeded in the legal mode; that is, the record, if not impeached by itself, imports a legal choice and is to be credited ; but if in any particulars it is impeached by itself ; then, so far as it is thus impeached, it is not entitled to credit. By looking at the record of the proceedings of the meeting at the adjournment on the 31st of *April*, we find that the defendants and *Hasty* were chosen assessors by ballot ; this is a clear implication that they were not chosen in that manner on the 22d of *March*, and is therefore so far an impeachment of the record of their legal choice as assessors on that day ; but as the record speaks of no others chosen by ballot on the 30th of *April*, the impeachment of the first record extends no further than to the choice of assessors ;

Mussey *v.* White & al.

leaving the usual import of the record in other respects on its original ground. It seems then on this principle, that there is legal record evidence of the choice of the defendants and *Hasty* on the 22d of *March* as selectmen. It appears further, that *Tompson,* on the 24th of *March* was duly sworn as selectman and assessor, and that on the 26th the other two were sworn in the same manner. But as neither of the three was legally chosen assessor till the 30th of *April,* it is very clear that the oath taken by them as assessors before that time, was of no avail ; and it further appears that they never after were sworn as assessors. Of course they never were qualified to act that year as assessors, in virtue of their election as such on the 30th of *April.* The remaining question is whether they were *ex officio* assessors, in virtue of their office as selectmen, in the peculiar circumstances above detailed. The statute must answer this question. The second section of our statute of 1821, *ch.* 116, provides "that if " any town shall not choose assessors as aforesaid ; or if so many " of them so chosen shall refuse to accept, as that there shall not " be such a number of them as any town shall vote to be the " assessors thereof, then the selectmen of such town shall be and " hereby are declared and appointed the assessors thereof." Now as the persons chosen assessors on the 30th of *April* never took the oath of office as such after that choice, they could not act in virtue of that election, as we have before stated ; and in such a case as this we do not see why this omission to become qualified may not be fairly considered as a refusal to accept, and an election to consider themselves as *ex officio* assessors, in virtue of their election as selectmen ; and their having, after that election, taken the oaths as selectmen and assessors too. The case before us presents several questions which seem to be new and susceptible of different considerations ; and under such circumstances we see no violation of principle in giving them such a construction as tends to sanction the proceedings of the defendants rather than defeat them. In this view of the subject, this second objection falls to the ground ; because, we do not consider the circumstance of the defendants having acted as assessors and signed the assessment and warrant as such, as evidence of acceptance ; there could be no legal and effectual acceptance without their

having been duly sworn. Besides, the above section declares them in such circumstances, to be assessors ;—of course they might very properly subscribe the assessment and warrant as such.

The *third* objection is that the assessors *did* not give legal notice to the inhabitants to bring into them perfect lists of their polls and estate. The language of the 12th section of said statute on the subject is this,—" shall give seasonable warning to the " inhabitants by posting up notifications in some public place in " said town or plantation, or notify the respective inhabitants in " some other way." The report states that it was the practice in the town for the assessors to give personal notice ; and that such was the practice they adopted that year ; and it states further that the assessors took proper pains to give the plaintiff this usual notice ; but that he went away and stayed away on purpose to prevent their giving such notice. After this singular evasion, the objection on account of the want of notice comes with a very ill grace from the plaintiff ; and it would not be much credit to our laws or our Courts of Justice, if such a stratagem should meet with success or even countenance. As this was the usual mode of giving notice, the plaintiff must have been conusant of it ; and it seems he expected it, by his avoidance. Mr. *Dane* in his abridgement, *vol.* 5, under the title "*bond*," page 178, 179, when speaking of disjunctive conditions, says, " If both, when the " bond is made, be possible; and one becomes impossible after, " it is material to inquire when and by what means ; if after the " time set for performance, it is clear the bond is forfeited by " non-performance at the time; if before such time, then by what " means ;—if by the act and fault of the obligee, it has been " shewn he can never plead his own fault, to have a performance, " which, without such act or fault, he never could have enforced." This is the law in case of a solemn contract ; and it would seem that in the case of an obligation imposed by law, the principle would not be applied against those on whom the obligation is imposed, with more severity. By the statute, the defendants were bound to give notice by posting notifications, or personal notice, at their option. The plaintiff, by his own act of artifice and evasion, rendered it impossible for them to give him personal notice ; and

Mussey *v.* White & al.

therefore, he cannot plead this act and fault of his own, to have a a performance of the other part of the alternative, which, without such act and evasion, he could never have demanded. The reason and spirit of the law appears the same in both cases. In *Borden v. Borden* 5 *Mass.* 67, the Court say, "but supposing a "tender necessary, proving himself ready with a deed, which "would have been tendered, if the defendant had not avoided it "by evasive contrivances, seems equivalent to a tender ; and "such is the opinion of the Court on this point." We therefore overrule this objection.

The *fourth* is that the papers produced as the valuation and assessment, were not respectively so entitled. The law does not require any such title. The book which is composed of both those documents, was lodged in, and taken from the assessors office; and these documents are properly signed by the defendants; and on inspection are found to be in the form of valuation and assessment. Another objection made is, that it appears the assessors assessed the plaintiff for faculty, contrary to law. The reply to this objection is, that on inspection of the document, the fact is found to be otherwise. These objections cannot avail the plaintiff.

The *fifth* is that the valuation and assessment were not lodged in the clerk's office; but the verdict has given a decisive answer, by finding that they were seasonably deposited in the assessors office; and this by law, was sufficient.

The *sixth* objection is that the warrant signed by the defendants and delivered to the collector was illegal; inasmuch as it was not made conformably to law. The 17th *sec.* of our statute before cited, prescribes the form of a warrant from assessors to collectors, for the collection of State taxes; and directs that such warrants shall in substance agree with such forms;—and that a similar form, *mutatis mutandis*, shall be used for the collection of county and town taxes. Upon comparing the warrant in the present case, which embraces all three of the taxes, it is found in several particulars to vary from the statute form; and the only question is whether it does in substance conform to the law. The expression " in substance" used in the statute, was inserted to prevent the evil consequences which would probably follow in

every town in the State, if strict formality were in all cases required. We are therefore authorized and bound to give a fair and liberal construction of the words used, and of the conduct of officers in framing the instruments alluded to in the section. Are the variances in matter of form, or of substance ? The first variance is, that in the direction of the warrant to *Bayley*, he is stated to be the collector of taxes for the town of *Standish*, without designating in what county that town is situated; but on looking into the writ in this case, which is referred to in the report, we find the plaintiff says the defendants live in *Standish* in the county of *Cumberland*. The next objection is, that the warrant does not contain the introductory words—" In the name of the State of Maine you are required, &c. The answer is that a public law authorizes assessors to issue warrants to collectors; of this we are bound to take notice; and also that all the officers in the State act under its authority and in its name, either expressed or implied; because they are exercising a portion of the sovereign power delegated to them. In a justice's writ this idea is expressed;— *his* requisition being in the *name of the State*. The precepts from this Court and the Court of Common Pleas are not so. The State itself speaks to its officers. The language in question inserted in the statute form is respectful and proper; but we cannot deem the warrant as illegal in consequence of their omission; that is —they are not words of substance within the meaning of the law. The next objection is, that the warrant essentially varies from the prescribed form, in omitting entirely to state the following clause —" it being this town's proportion of a tax or assessment of " (naming the total amount of the State tax) granted and agreed " upon by the legislature of said State at their session, begun " and held at *Portland* on the——day of——for defraying the ne- " cessary charges of securing, protecting and defending the " same." It is evident that all this is mere recital; and of itself is no evidence of the truth of the facts recited. In an action to recover lands sold for taxes, it would be necessary for the person claiming to hold under the sale, to shew the granting of the tax, as well as the legality of its assessment, and it would by no means be sufficient for a tenant in such an action to give in evidence the warrant containing a recital of such grant to prove the tax was

granted. Uniform practice is in conformity to this principle. If then the recital of the fact in the warrant is no proof of the existence of the fact, why should the omission of the recital vitiate the warrant, and render it a dead letter ? And how can such a recital be matter of substance, in respect to the collector, or to the persons named in his list, if in fact the tax has been granted by the legislature and duly assessed by the proper officers ? In such a case we are disposed to consider the recital as matter of form and not of substance, in favor of the correctness of proceedings, if otherwise conformable to law. The same observations may be applied to the non-recital as to the legal origin of the county and town tax. These, however, or their respective amounts, are directed to be paid to the treasurers respectively authorized to receive them. It is not contended that there are in the warrant any other variations from the statute form; and as it is under the hands of the assessors and under seal, we consider it was sufficient, notwithstanding the foregoing objections; and this leads us to the seventh and last.

This last objection is, that the warrant, though made out and signed by the defendants on the 27th of *August* 1821, was not delivered to *Bayley* the collector, until the 9th of *October* 1822, the day before the arrest, and was then delivered by *Tompson*, *White* not being an assessor for 1822. It further appears by the report that the assessors intended to deliver the warrant with the bills of assessment, but by mistake delivered to him another paper instead of it. And now, what are the legal consequences of these facts ? The warrant was a lawful precept when made and signed; and if it had then been delivered to the collector, it would be in full force at this moment, provided any of the sums assessed in the bills committed to him are now due and unpaid; although other persons have been elected assessors; and another person collector. See *Stat.* 1821, *ch.* 116, *sec.* 27. The virtue and life of a warrant therefore, do not depend on the official life of the assessors who signed it, or of the collector to whom it is directed and delivered. The only question then is, when did it lose its virtue ? Or in other words, was it not an existing, legal precept in itself, when delivered to *Bayley*; though he might not have derived any authority from it, until he actually received it?

No cases have been cited to this point by the counsel on either side. The arguments stand on the reason of the thing, and upon general principles. Suppose a Justice of the Peace, on complaint and oath should issue his warrant against a person charged with larceny, and returnable before himself or any other Justice of the Peace in the county; and should die, or his commission should expire before the warrant is placed in the hands of an officer for service; may it not still be served and returned before another magistrate, and he legally take cognizance of the offence, or recognize or commit the person charged? Or suppose that a majority of the selectmen of any town should decease immediately after they had made out and signed in due form a warrant for a town meeting; could not such warrant be legally delivered to a constable to warn the meeting; and would not the meeting be regular? If the clerk of this Court should make out an execution in due form, and place it in his desk, and the next day resign; could not the attorney in the cause, properly hand the execution a week afterwards to an officer for service; and would not the execution be a legal precept and a complete and justification to the officer? Other cases might be put by way of illustration; but these are sufficient. If the question should be considered as doubtful, we should certainly incline to that decision which would go to sanction rather than to disturb proceedings, honestly intended and believed to be regular.

We have thus taken a distinct view of each objection urged by the plaintiff's counsel, and given it a particular examination; and the result is, that they furnish no legal or proper ground for setting aside the verdict. The motion is overruled and there must be judgment on the verdict.