Judge Grimke stated the case, and delivered the opinion of the court:
This is a bill in chancery. It charges that James Pedan, deceased, was the father and guardian, appointed in Pennsylvania, of the complainant; that it became necessary to sell real estate in that state, and for that purpose an act of the legislature was passed authorizing the sale of the ward’s lands, and directing the investment of the proceeds in stocks, and other safe funds. That in pursuance of this act a sale was made, the money received by the guardian, but that it was never invested; that the guardian removed to Ohio, bringing his ward with him; that they both became domiciled here ; that the guardian died here, and that Eobb, the defendant, is his administrator. The bill is filed to obtain an account, and to it there is a general demurrer.
*233 Objections are made at the very commencement to this whole course of proceeding, as contrary to the policy of our laws and. as inconsistent with the mutual comity, which should subsist -among independent states; that, in fact, there is an entire want of jurisdiction in the courts of Ohio, the defendant’s intestate having been appointed guardian by the probate court in Pennsylvania, where alone he could be called to account, and rendered responsible for any misconduct in the discharge of his duty.
This view is not founded upon any express adjudication, but it is compared to the case of an original administration granted in another state, or in a foreign country; and, it is affirmed that in analogy to what has been declared to be the law in that case, no such suit can be instituted in Ohio. The general principle to which allusion is made is this, that “ no suit can be brought by or against a foreign executor or administrator in the courts of the country in virtue of his foreign letters testamentary or of administration.” This principle has been firmly settled in Great Britain, and has been acknowledged by many of the courts of the United States. 2 Ves. 35; 3 Cranch, 319; 4 Rand. 158; 2 Gill & Johns. 493; 5 Mass. 67; 4 Mason, 16; 20 Johns. 229; 3 Day, 74. But it must be recollected that the law of Ohio has, in some measure, departed from this general maxim. It authorizes an executor, or administrator, ^appointed in any other state, by virtue of that authority alone, to prosecute any suit here. This provision, however, does not, by any necessary implication, involve the liability to be sued in Ohio; that has been supposed to stand upon different ground. The distinction between a principal and an ancillary administration — between an administration •granted in the state where the testator or intestate was domiciled, and one obtained in a state where he had merely left property, •has been fortified by a number of recent decisions, and more par•tieularly by a train of them in Massachusetts; and yet it is doubtful whether the original meaning of that rule has not been impaired and frittered away by the conclusions to which some of these very decisions lead, for in Dawes v. Boylston, 9 Mass. 323, it is held that an administrator'appointed there is held to return an inventory of the intestate’s effects, although execution can not issue against him. In Richards v. Dutch, 8 Mass. 506, it is decided that an administrator, ancillary to the principal one in a foreign country, may be compelled to pay the testator’s debts to creditors *234 in Massachusetts; and in Dawes v. Head, 3 Pick. 128, which is a. very elaborate and learned opinion, the same doctrine is repeated, and the administrator, in that state, is held bound in all cases, even where the estate is insolvent, to pay the debts due to citizens in Massachusetts; he is to pa y pro rata, but without regard to any fanciful preference which may be given to one species of debt over another, and it is only where there is any residuum left, that it is to be remitted to the country where the original administration was granted.
The question now is, what application have these principles to the case of a guardian ? We have seen that the distinction between á principal and an ancillary administration, after all, resolves itself merely into a duty, in the latter case, to -retain the-funds long enough to ascertain whether the whole estate, abroad and at home, will be solvent or insolvent, as regards all the creditors, foreign and domestic, and does not involve an exemption from being sued; so that the agreement, drawn from analogy, does not assist the respondent. 1
In Morrel v. Dickey, 1 Johns. Ch. Cas. 153, it was held, that letters of guardianship, granted in another state, could not be recognized in New York. The learned chancellor so decides upon the strength of the adjudications in the case of a foreign administrator, and does not seem to be aware of Morrison’s case, cited in Sill v. Worswick, 1 H. Black. 665. Mr. *Morrison, being a bond creditor of the respondent, was under a commission of lunacy in England, and the respondent removing into Scotland? his committee (or guardians) instituted a suit there. The court of session-decided that the suit could not bo sustained there, but, on appeal, the decision was reversed, and the final determination, does not appear to have been ever disturbed since. So that, even in Great Britain, an important distinction is taken between a foreign administrator or executor, and a foreign guardian. A guardian does not, like two or more administrators, represent conflicting classes of creditors, residing in different jurisdictions, and themselves residing in different countries. He is not subject to the samé disabilities as an administrator, etc. He may remove from the state where he was originally appointed to any other, and, although it was once a greatly controverted question, yet it is now settled that he has even a right to change the domicile of his ward. Pittinger v. Wightman, 3 Meriv. 67. The reason *235 of the doubt was, that the exercise of the right would put it in the power of a guardian to change the succession to the personal property of his ward; a reason which, although it seems to have had great weight with some of the civil-law lawyers, has never entitled itself to much with English or American jurists.
Parish, for the complainant.
Tract, Bell, and Harree, for the defendant.
It is evident, that if the present suit can not be sustained, the-complainant is without any adequate remedy. If he can not institute a suit in Ohio because the letters of guardianship .were granted in Pennsylvania, he can not, for the same reason, sustain one in Pennsylvania, because the defendant was appointed administrator in Ohio, which leads to the last consideration, and one which is alone decisive of the case; that this bill is not filed against the guardian (for he is dead), but against his personal representative, who is completely accountable to the courts of Ohio. . There must be a decree, therefore, for the complainant, and a, reference to the master, and the same decree and order may be had in the case of Nelson and wife v. James Pedan’s Adm’r, the circumstance of the complainants living out of the state not distinguishing it in principle from the other.