## MINOT THAYER, 2D. vs. EBENEZER TURNER.

A party to an exchange of horses, who is deceived by false representations, cannot main-tain an action of replevin for his horse, against the party who deceived him, until he has rescinded the contract, and returned, or offered to return, the horse received by him.

On an exchange of horses by A. and B., A. was deceived by B.'s false representations, and sued out a writ to replevy the horse delivered by him to B., and went, with an offi-cer, to B.'s premises, and there left the horse received of B., without any communi-cation with B.: The officer then took the other horse, on the writ, and afterwards read the writ to B.; and A., at the same time, informed B. that his horse was returned. *Held,* that the action of replevin could not be maintained; it being commenced before the contract was rescinded by the return of B.'s horse.

A. and B. exchanged horses, on a false representation, by B., that his horse was kind: On a trial of the horse, in the presence of B., the horse was found to be unkind, and B. requested A. to make a further trial, which A. refused to do: B. then promised A. that he would meet him on the next Monday, and "make all right, and settle the affair of the horses." On Monday, B. sent a message to A. that he would not take the horse back: A. thereupon sued out a writ of replevin against B., without any further communication with him, and took the horse which he had delivered to B. in exchange. *Held,* that the action of replevin might be maintained; as a jury would be warranted in finding, either that A. had offered to return the horse to B., and that an answer had, by mutual consent, been postponed till Monday, and that B.'s mes-sage, on that day, was a refusal of that offer; or, that the message was an express waiver of any further offer to return the horse.

THIS was an action of replevin, to try the question of prop-erty in a horse. Trial in the court of common pleas, before *Ward,* J. whose report thereof was as follows:

It was conceded and agreed that, on the 26th of June 1843, the plaintiff exchanged the horse in question for the defendant's colt, and that the exchange was made under such a false repre-sentation or warranty, by the defendant, as to the kindness of the colt, that the plaintiff had a right to rescind the contract of exchange; and one question was, whether the plaintiff had so rescinded the contract, or had so returned the colt to the de-fendant, that, at the time of the taking of the horse on the re-plevin writ, an action of replevin would lie. On this point, the evidence was, that on the 3d of July 1843, the plaintiff had not returned the colt to the defendant, and that the plaintiff, before going to return the colt, and retake or demand the horse, pro-cured the replevin writ, and went with the officer who served it, and with the colt, to the defendant's barn yard, about five

miles distant from the plaintiff's house; that the officer was instructed not to serve the replevin writ, until he had returned the colt into the defendant's yard; that the plaintiff and the officer, on their way to the defendant's yard, saw the defendant in his field, but did not speak to him, nor did it appear that he saw them; that the plaintiff and the officer put the colt into the defendant's yard, in as good condition as when the plaintiff received him, and immediately thereupon took the horse, that was standing in the same yard, on the replevin writ, and proceeded on their way home, without any purpose of speaking to the defendant; that while they were on the way, the defendant came to them from his field, and forbade their taking off the horse; that the officer then read to the defendant the writ and the replevin bond, as the authority by which he had taken the horse; and the plaintiff then told the defendant that the colt nad been restored, by putting him into the defendant's yard; and that the defendant did not afterwards object to the carrying away of the horse.

The judge instructed the jury, that the suit was not prematurely brought; and that, as the defendant, at the time of the exchange, knew the colt to be unkind, and falsely represented otherwise, the plaintiff had a right, after putting the colt into the defendant's control, without giving notice of that fact to the defendant, to institute an action of replevin, and commence the service of the process in the defendant's yard, by taking the horse therefrom by the officer.

The jury found a verdict for the plaintiff, and the defendan alleged exceptions to said instructions.

*Wilkinson & E. Ames,* for the defendant.

*F. Hilliard,* for the plaintiff.

SHAW, C. J. Replevin for a horse, on a claim by the plaintiff to rescind a contract of exchange, previously made with the defendant, on the ground that the plaintiff had been deceived by false representations of the defendant as to the character of a colt given in exchange. The question is, whether, upon the facts reported, the plaintiff can maintain the action of replevin.

In order to maintain replevin, it 's clear that the plaintiff must

prove either a tortious taking or a tortious detention of the property replevied. *Page* v. *Crosby*, 24 Pick. 215. A sale, made under false representations, is not *ipso facto* void, but is voidable at the election of the party defrauded. The vendor, who has parted with his property upon such false representations, may insist that no title passed to the vendee, or to any other person claiming title under him, other than a *bonâ fide* purchaser for value, and without notice of the fraud ; and in such case, the vendor may maintain replevin or trover for his property. *Thurston* v. *Blanchard*, 22 Pick. 18. But the rule thus laid down is always accompanied with this qualification, that the power of rescinding, in the case stated, is at the election of the party defrauded. Although he is imposed on, he may keep the property, and affirm the sale ; or he may rescind the sale, at his option. But if he elects to rescind the sale, he must return and restore to the other party the whole of the consideration, whether money, goods or securities, received by way of consideration for the sale, which may be of any value to either party. *Kimball* v. *Cunningham*, 4 Mass. 502. *Conner* v. *Henderson*, 15 Mass. 319. *Perley* v. *Balch*, 23 Pick. 283

If the vendor holds nothing of any value to either party ; be restored, and nothing remains to be done on his part, he may maintain trover or replevin, without a special demand ; because the taking was tortious, being obtained by fraud. Such was the case above cited, of *Thurston* v. *Blanchard*, where the plaintiff had nothing of value to either party. So the result is the same, where, although the plaintiff has received some valuable consideration from a third party, he has nothing to restore to the defendant. *Stevens* v. *Austin*, 1 Met. 557. Such would be the case if the equivalent received in goods was worth nothing to either party. *Perley* v. *Balch*, before cited.

The reason of this rule is, that the plaintiff, as far as it is in his power, shall put the defendant *in statu quo,* by restoring and revesting his former property in him, without putting him to an action to recover it, before he can exercise his own right to take back the property sold, or bring an action for it.

It is conceded, in the present case, that the colt received by

the plaintiff was of some value, and that he was bound to return it before he could lawfully take his horse, or maintain an action of replevin for him. The question therefore is, whether, at the time the plaintiff commenced his action — taking it to be true, under the circumstances, that the action was commenced by the *service* of the writ — he had a good cause of action. It appears that the plaintiff, accompanying the officer, carried the colt to the defendant's yard, where the horse was, left the colt on the defendant's premises, and forthwith the officer took the horse on the replevin writ. The plaintiff, although he saw the defendant when on his way to the yard, gave him no notice of his purpose to rescind the contract, and made no tender of the colt. This act of carrying the colt to the defendant's premises, and leaving him there, without declaring his purpose to the defendant, or notice to him, was not a delivery or tender of the colt to him, and did not necessarily divest his own property in the colt, nor revest the property in the defendant. It was not a return or restoration of the colt to the defendant, within the meaning of the rule requiring such return. Had he *tendered* the colt to the defendant, (as he could not compel the defendant to receive him,) such tender, if refused, might be considered as doing all that was necessary, on his part, to rescind the contract. So, if he had taken reasonable measures to make such tender, and it had been prevented by the defendant's avoidance or other cause, it might have been sufficient. But in the present case, it is manifest that such tender might have been made and was not made. The court are therefore of opinion, that as the replevin writ was served, and the action commenced, before the contract was rescinded by the return of the colt, it was prematurely brought and cannot be maintained.

It must be understood that this decision does not proceed on the ground taken by the defendant, that the plaintiff must have demanded his horse of the defendant, and been refused, before he could bring trover or replevin. Had the plaintiff restored the colt, and thereby effectually rescinded the contract, he would have been placed in the same condition as if no contract of sale had been made ; and as the possession of the horse was

obtained by unlawful means, namely, by fraudulent representa
tions, he might have treated the possession of the horse, by the
defendant, as tortious, by relation, from the time of the first
taking, and so might have maintained trover or replevin without
a demand.　But the ground of the decision is, that the plaintiff
had not placed himself *in statu quo*, by restoring the colt and
effectually rescinding the contract, and therefore had not qual-
ified himself to maintain any action for the wrongful detention
of the horse.

It was argued for the plaintiff, that the right to rescind, and
take back the property, in the case of goods sold under false rep-
resentations, does not depend upon the assent of the parties, but
is a legal right of the vendor thus deceived.　This is true ; but
it is a conditional right, the condition being that he shall restore
the consideration.　That condition, we think, was not complied
with at the time this action was commenced.　The case is
therefore to be remanded to the court of common pleas, for a
new trial in that court.

A new trial was had in the court of common pleas, before
*Colby*, J. who made the following report thereof :　In the case,
as formerly presented, it having been conceded and agreed that
the parties had exchanged horses, and that such exchange was
fraudulent, and could have been avoided by the plaintiff ; and
the supreme judicial court having decided that the plaintiff should
have placed the defendant *in statu quo*, before the commence-
ment of the present action, and that he had not done so ; the
plaintiff now contended, *first*, that the said exchange was condi-
tional, and *secondly*, that the defendant had waived his right
to insist upon a restitution of the colt.　Upon these two points,
there was evidence tending to prove the following facts :

That the exchange, after some previous negotiation, took
place on Monday ; that the plaintiff wanted the colt to match
another horse that he owned ; that the defendant represented
his colt to be sound and kind ; that the plaintiff said, at the
time of the exchange, or transfer of possession, "if your colt is
what you represent him to be, I will exchange with you ; " that

the plaintiff told the defendant that he would inquire about his colt, and the defendant told the plaintiff that he might give the colt a fair trial; and that thereupon the horses were exchanged That, on the following Friday, the defendant called at the plaintiff's house, (according to a promise to that effect, which he made at the time of the exchange,) and a trial of the colt was made in his presence; that the colt exhibited a fractious and ungovernable temper; and that the defendant, after saying that the colt never acted so before, requested the plaintiff to give him a further trial, to stop his grain, and try him in a stage coach; that the plaintiff refused to comply with this request; that the defendant, at the same time, informed the plaintiff that he had found the plaintiff's horse to be all that he had represented him to be, and said he would come on Monday or Tuesday following, and make all right, and settle the affair about the horses; that, on the Monday following, the defend ant sent a message to the plaintiff, that he might do as he pleased with the colt, and give him as much grain as he pleased, and use him as he pleased; that he (the defendant) should not take the colt back; that he was sick, and could not go down as he had agreed; that, after receiving this message, the plaintiff sued out the writ of replevin, and went with the officer to the defendant's place of residence, and turned the colt into the defendant's yard, and seized the horse before making service of the writ; as is more fully stated in the report of the former trial.

Upon the evidence of these facts, the judge ruled, and proposed to instruct the jury, " that if the horses were exchanged merely for the purpose of trial, or that it was to be no exchange if either horse did not come up to the representation of his character and qualities, it was incumbent on the plaintiff to return the colt, received of the defendant, previous to the commencement of the present action; that the message, sent by the defendant to the plaintiff, was no waiver of the right of the defendant to be put *in statu quo* before the commencement of this action, (coupled with the fact that the plaintiff actually undertook to return the colt before its commencement,) but was a

mere remitter to his legal rights." Upon these rulings and instructions, under the direction of the court, a verdict was returned for the defendant, and the plaintiff alleged exceptions.

The points arising on these exceptions were argued and decided at October term 1845.

*F. Hilliard,* for the plaintiff. The bargain was conditional, and the *property* did not pass, but the *possession* only. *Marston* v. *Baldwin,* 17 Mass. 606. *Towers* v. *Barrett,* 1 T. R. 136. *Duncan* v. *Cafe,* 2 Mees. & Welsb. 244.

There was evidence of an offer, or something equivalent to an offer, by the plaintiff, to return the defendant's colt, and of a waiver, by the defendant, of a return. The jury should have passed upon this evidence. See *Thornton* v. *Wynn,* 12 Wheat. 189. But an offer to return is not prerequisite to an action, in case of fraudulent representations. Notice to the defendant that the bargain is rescinded is sufficient. *Cozzins* v. *Whitaker,* 3 Stew. & Port. 329. *Kellogg* v. *Denslow,* 14 Connect. 421. *Steigleman* v. *Jeffries,* 1 S. & R. 477. *Rutter* v. *Blake,* 2 Har. & Johns. 353. *Cash* v. *Giles,* 3 Car. & P. 407. *Okell* v. *Smith,* 1 Stark. R. 107. *Poulton* v. *Lattimore,* 9 Barn. & Cres. 259. *Fitt* v. *Cassanet,* 5 Scott N. R. 902, and 4 Man. & Grang. 898. *Fisher* v. *Samuda,* 1 Campb. 190.

If no offer was made by the plaintiff to return the colt, it was because the defendant promised to meet him at a future day, and make all right; and this was a waiver, by the defendant, of a tender, or offer to return. *Brigham* v. *Clark,* 20 Pick. 43. *Swan* v. *Drury,* 22 Pick. 485. *Frazier* v. *Cushman,* 12 Mass. 279. *Borden* v. *Borden,* 5 Mass. 67. *Northfield* v. *Taunton,* 4 Met. 436. *Gilmore* v. *Holt,* 4 Pick. 258. *Jackson* v. *Jacob,* 3 Bing. N. R. 869. *Perry* v. *Smith,* 1 Car. & Marshm. 554. *M'Nish* v. *Coon,* 13 Wend. 26.

*Wilkinson,* for the defendant. A conditional sale stands on no different ground from a fraudulent sale. In both, the contract must be rescinded, and the vendor put *in statu quo,* before an action will lie. The evidence shows neither a rescission of the bargain, nor an agreement to rescind it. The effect of the interview of the parties, when a trial was made of the colt, was to leave matters as they found them.

The defendant had not disabled himself to return the plaintiff's horse, and was not liable to an action until the plaintiff had rescinded the contract, and put him *in statu quo.* That his message to the plaintiff, that he would not take back the colt, did not give the plaintiff a right to sue without returning the colt, is shown by the case of *Pomroy* v. *Gold,* 2 Met. 500.

SHAW, C. J. This case, after another trial, again comes before the court, on exceptions from the court of common pleas, upon a state of facts materially different from the former. In the former case, it was held that the possession of the plaintiff's horse having been obtained by the defendant by fraud, the original taking was tortious, and therefore trover or replevin would lie without a demand. But it was further held, that the plaintiff, in order to rescind the contract, must restore and refund the consideration; and as the consideration was the defendant's colt, he must redeliver or tender back the colt, that the defendant might be placed *in statu quo,* without the necessity of bringing an action; and that placing the colt on the defendant's premises, without notice of his purpose to rescind the contract and restore the colt, was not such restoration; that notice of such purpose given to the defendant afterwards, on his return home, was insufficient for the purposes of this action; because it occurred after the writ of replevin was served, and of course after this action was brought. There was then no evidence of any communication between the parties, from the time of the exchange of horses, to the delivery of the defendant's colt at the barn yard, where the replevin writ was served.

In the present case, there was evidence tending to show the following facts: [Here the chief justice stated the evidence, as above reported by *Colby,* J.]

Upon this evidence, the learned judge ruled, and proposed to instruct the jury, " that the message, sent by the defendant to the plaintiff, was no waiver of the right of the defendant to be put *in statu quo* before the commencement of this action, (coupled with the fact that the plaintiff actually undertook to return the colt before its commencement,) but was a remitter ;

47 *

his legal rights." If, as we understand this last clause, it was a direction that the message only remitted the plaintiff to his legal right, to recover back the horse, upon tender of the colt before the action was commenced, we think it was not correct. We are of opinion that these facts, if proved to the satisfaction of the jury, would have warranted them in finding, either that an offer to restore the colt had been made by the plaintiff on Friday — an answer to which had, by mutual consent, been postponed to Monday or Tuesday — and that the message was an answer refusing such tender, (*Jackson* v. *Jacob,* 3 Bing. N. R. 869,) or that it was an express waiver of any further tender. Where one would otherwise be required to make a tender, and the person to whom it is to be made expressly declares that he will not accept it, as a general rule, and especially in case of a chattel, the formality of a specific tender is dispensed with and waived. *Borden* v. *Borden,* 5 Mass. 67. *Frazier* v. *Cushman,* 12 Mass. 279.

We think, therefore, that the jury should have been instructed, that if the parties met on Friday to try and examine the colt, and the plaintiff then gave notice to the defendant of his intention to restore the colt and take back the horse ; and if the defendant agreed to meet the plaintiff on Monday or Tuesday, and make all right, and settle about the horses ; and on the Monday following, the defendant sent a message to the plaintiff, that he would not take back the colt ; it was a waiver of any further tender, and the plaintiff had a right to maintain trover or replevin for his horse.

As to the fact that the plaintiff put the colt on the defendant's premises, (indicating an intention to make a tender, which this court have considered insufficient,) it was highly proper that he should do so, and was beneficial to the defendant, because it afforded him facility in regaining his property, without the necessity of an action or even of a demand. But, as it regarded his right of action for the horse, it was a work of supererogation ; because that right was already complete, by the previous offer to the defendant and his refusal to accept, or by his waiver of a specific tender of the colt.

But it was argued for the defendant, that a tender of the colt should have been made simultaneously with a demand for the horse, in order that the defendant might restore the horse without an action, and thus avoid expense.

This argument was urged in the former case, and the answer was then made, with which we are now satisfied, that as the horse was obtained, in the first instance, by fraud, the original taking was tortious, and amounted in law to a conversion, at the election of the party defrauded, and therefore no demand of the horse, by the plaintiff, was necessary to enable him to bring an action. He was only to restore the colt received in exchange ; and if he did this, or the defendant gave him notice that he would not accept the colt if offered, before the writ of replevin was served, his right of action was complete.

*Verdict set aside, and new trial granted.*