## JOHN CAMPBELL *et al. versus* THOMAS SHELDON *et al.*

In order to sustain a bill in equity for discovery and relief, where the loss of a deed is relied on as the sole ground of chancery jurisdiction, the plaintiff, according to the English chancery practice, must file an affidavit of the loss; but this rule cannot extend to a case where a fraud, trust or other known ground of chancery jurisdiction, is relied on, and a deed is sought to be disclosed, as any other material fact is sought to be disclosed, by the answer of the defendant; and as this Court is not vested with equity jurisdiction in cases of lost deeds, independently of some other ground of equity jurisdiction, the rule requiring an affidavit is not applicable here.

This Court has not equity jurisdiction to compel the performance of a trust arising under a will proved in another State, but of which there has not been a probate in this State nor a copy filed and recorded pursuant to *St.* 1785, *c.* 12; nor can the executor appointed in such other State be recognised here as the rightful executor, before he takes out letters of administration here pursuant to that statute.

The *St.* 1817, *c.* 87, giving this Court equity jurisdiction "in cases of trust arising in the settlement of estates," does not apply to the settlement of estates by executors *de son tort.*

Property was conveyed by deed in trust, to a person domiciled in another State where he died. His will was there proved, and an executor appointed, who lived in this State, and who, having received the testator's effects, including the trust property, brought the same into this State. The will was not proved here, nor a copy of it filed and recorded pursuant to *St.* 1785, *c.* 12. It was *held*, that this Court had not equity jurisdiction to compel the executor to perform the trust relating to such trust property.

If the executor had here filed a copy of the will and taken out letters of administration, pursuant to *St.* 1785, *c.* 12, and if he had not accounted in the State where the principal administration was granted, for all the assets there received by him, the probate proceedings there could not be revised and corrected in this State.

A will was proved in another State, where the testator had his domicile, and legacies were paid, and no decree was there passed ordering the legatees to refund any portion of their legacies. The will was never proved here, nor a copy of it filed pursuant to *St.* 1785, *c.* 12. It was *held*, that legatees living in this State could not be compelled by this Court, upon a bill in equity, to refund; for it could not be shown that they were liable to contribution, without producing the will and making a final settlement of the estate; which, upon the facts appearing, it is not competent to this Court to make.

THIS was a bill in equity, brought by John Campbell, of Charleston, South Carolina, and Isabella S. Marshall, of New York, an infant, against Thomas Sheldon, the executor of the last will of Henry Sheldon, and Eliza A. Sheldon and others, legatees under the same will.

The bill alleges, that on July 27, 1819, John Marshall, of Charleston, made his will, in which he gave to his wife,

Eliza A. Marshall, all his estate, real and personal, and appointed the plaintiff, Campbell, one of his executors ; that Marshall died on June 7, 1820, and that his will was proved, on July 24, 1820, in the ordinary's court, in Charleston, and that administration of the estate was committed to Campbell, who accepted the same ; that Marshall was in partnership with Ezra L. Miller, of South Carolina, and at the time of his death, was worth, including his stock in trade, 20,000 dollars more than sufficient to pay his debts, all in South Carolina, and to which Eliza became entitled under the will ; that Eliza, at Charleston, on June 29, 1821, by deed, assigned to Campbell certain personal property, and also all that belonged to her as legatee of John Marshall, *in trust*, to hold the same for her sole use during her life, free from the control or debts of any future husband, and after her death, for the use of Isabella S. Marshall, the daughter of John Marshall, and to allow Isabella to enjoy the income until she should arrive at twenty-one years of age, and then to pay and deliver the property to her, and if she died before the age of twenty-one, to pay and deliver one half to the nearest of kin to John Marshall, and one half to the nearest of kin to Eliza ; that this deed was made with the knowledge and consent of Henry Sheldon, then of Charleston ; that Miller, on July 17, 1821, being possessed of the copartnership effects, did, by the procurement of Henry Sheldon and with the consent of Campbell and Eliza, assign by deed to Campbell and Henry Sheldon all the copartnership property, real and personal, *in trust* to repay them the debts of the copartnership assumed by them, and to pay the residue to Campbell, as the executor of John Marshall, to be disposed of according to law and the directions of Marshall's will ; that under the assignment of Miller the whole of the copartnership effects, amounting to at least 25,000 dollars, was received, collected and disposed of by Henry Sheldon and appropriated to his own use, and that neither he, in his lifetime, nor his executors, nor any of the respondents, have accounted therefor, except as hereafter mentioned ; that Henry Sheldon was married o Eliza A. Marshall, at Charleston, on September 17, 1821 .

Campbel
*v.*
Sheldon,

Campbell
*v.*
Sheldon.

that he made his will on January 7, 1825, and died at St. Augustine, East Florida, on March 18, 1825 ; that by his will he bequeathed to his wife his furniture, and directed Thomas Sheldon and Augustus Collins, whom he named executors, to dispose of all his other property, — and bequeathed to Collins, *in trust* for Isabella S. Marshall, 2,000 dollars, to be invested in stocks, and the income to be paid her semi-annually, and, after her death, upon certain other specified trusts, — and bequeathed a part of the residue to Thomas Sheldon and Collins, upon certain trusts, and the rest to other persons absolutely ; that this will was proved at Charleston, by the ordinary, according to the laws of South Carolina, and administration thereof, and of the estate of the testator, was granted to Thomas Sheldon solely, who accepted it, Collins declining ; that Henry Sheldon, at his death, held in trust under the assignment of Miller, over and above the debts and expenses to be paid out of the property assigned, the sum of 17,000 dollars, which he ought to have paid to Campbell, as executor of John Marshall, for the benefit of Eliza, as legatee, but had refused so to pay over, except a part thereof ; that Henry Sheldon, at his death, had property to the amount of about 45,000 dollars, all which there, after probate of his will, came to the hands of Thomas Sheldon as executor, and which was more than enough to pay the sum so due from Henry Sheldon as trustee under Miller's assignment, and all other debts of Henry, and expenses of administration ; that Thomas, on March 28, 1825, returned to the ordinary's office an inventory of Henry's property within the State of South Carolina, amounting to $ 23,050·07, and on April 13, 1830, an additional inventory, of $ 8,850·46, and on the same 13th of April filed in that office his administration account, charging himself with $ 28,199·19 cash received, and crediting himself with legacies paid as follows, viz. $ 2000 paid to Collins in trust for Isabella S. Marshall, $ 5000 paid for stocks in the hands of Thomas Sheldon and Collins in trust for Eliza A. Sheldon, and $ 4,500 paid to each of four other legatees ; that in addition to the sums stated in the account, Thomas received other property of

Henry to a large amount ; that Thomas was frequently requested by Campbell and Eliza A. Sheldon, and particularly on August 20, 1827, to account for the property so assigned by Miller and received by Henry, and pay the balance to Campbell for the benefit of Eliza, or to Eliza directly, yet Thomas has always refused so to do ; that Eliza, at New York, on May 19, 1830, by deed, for a good and valuable consideration, assigned to Isabella all Eliza's right and interest to all outstanding claims in favor of the estate of John Marshall against the estate, executors, legatees and heirs of Henry Sheldon or any other persons, reserving only such part of the . property and claims as she, Eliza, had already received from the estate of John Marshall, by virtue of which deed Isabella became entitled to all the right of Eliza to the effects assigned by Miller to Campbell and Henry Sheldon in trust, and the interest and profits, so far as they were outstanding at the time of the assignment to Isabella ; that by the laws of South Carolina, Thomas, as executor of Henry, was not obliged to give any bond or other security to account for the estate of Henry, and he did not give security therefor ; that Thomas, at the time of the death of Henry, and of the probate of his will, resided in Massachusetts, and that he has resided here ever since, and has taken and withdrawn the whole of the effects of Henry out of South Carolina to Massachusetts ; that there has not been heretofore, nor is there now, any estate of Henry within South Carolina, or elsewhere out of Massachusetts, from which the plaintiffs' claims can be paid, and they cannot now have any remedy or process to recover the same in South Carolina ; that the original assignment from Miller, and the books of account &c. of Henry, relating to his concerns, came to the hands of Thomas, and have, as the plaintiffs believe, so remained ever since, and the plaintiffs have not had and cannot have access to them ; all which is contrary &c., and the plaintiffs are remediless at law &c.; and they therefore pray that the defendants may be required upon oath &c., to answer &c. all matters set forth &c., and to set forth an account of any sums of money received by Henry Sheldon, or by any of the defendants, from the

Campbell
v.
Sheldon.

partnership effects assigned by Miller to Henry and Campbell &c., and that the defendants may be required to pay over to Campbell and Isabella S. Marshall sums so received and not heretofore paid over.

The defendants (except Eliza A. Sheldon) demur to the bill, and for cause of demurrer show ; — 1. That the complainants have not made such a case as, by the laws of this commonwealth, entitles them, in a court of equity, to any discovery or relief ; 2. That the bill is to discover a certain deed of assignment executed by Miller to Campbell and Henry Sheldon, and certain books of accounts, receipts, vouchers and other papers relating to the concerns of Miller and John Marshall and the proceedings of Campbell and Henry Sheldon as assignees, yet Campbell, one of the complainants, has not made affidavit that he had not in his custody or power the deed, books of account &c., for want whereof they pray relief ; 3. That it appears by the bill, that the domicile of Henry Sheldon, at the time of his death, was in South Carolina ; that his property was there situate ; that the right of granting probate of his will and administration on his estate, was vested in the ordinary of the district of Charleston, in South Carolina ; that Thomas Sheldon was duly appointed executor of Henry's last will, by the ordinary, and that he has proceeded to settle the estate of Henry, in the court of the ordinary ; that it is not stated in the bill, that Thomas or any other person has taken out administration on the estate of Henry, in this commonwealth, nor is any thing stated in the bill which would authorize any court in this commonwealth to grant such administration ; that this Court cannot recognise Thomas in his character of executor, nor is he accountable in this Court to the complainants, for his proceedings or liabilities as executor, nor has this Court jurisdiction of any matter relative to the settlement of the estate of Henry, but the jurisdiction of every matter relative thereto is exclusively vested in the court of ordinary and other courts in South Carolina ; 4. That there is no allegation against these defendants (other than Thomas Sheldon) whereby it is pretended that they ought to be charged in this bill, except by reason of their having received

certain sums of money from Thomas, acting as executor; that by the bill it appears, that those payments have been sanctioned by the allowance of the ordinary of Charleston; that the bill does not state, that the indebtment of the estate of Henry to the complainants has ever been ascertained by a judgment of court against the estate in favor of the complainants, or that any execution has ever issued upon any judgment so obtained against the estate.

After this demurrer was put in, the complainants filed an amendment to the bill, in which they allege, that in the administration account of Thomas Sheldon as executor, he charged the estate of Henry for debts paid and expenses, $ 3,276·03; that this sum, and $ 25,000 charged for legacies paid, have so exhausted the funds of the estate with which Thomas charged himself in his administration account, as not to leave in his hands sufficient to pay the amount due to the plaintiffs; that Thomas is insolvent and unable to pay the same; that the inventories and administration account were returned and acted upon without the knowledge of or notice to the plaintiffs or either of them; that since Thomas received the effects of Henry and became liable to pay the plaintiffs' claim, he has not publicly and to the knowledge of the plaintiffs, or either of them, been in South Carolina under such circumstances that he could be called to account and made liable to pay the plaintiffs' claim, nor has either of the defendants, since the payment of the legacies to them, to the knowledge of the plaintiffs or either of them, so been in South Carolina as that they, or either of them, could be called to account and made liable to pay the plaintiffs.

The complainants filed the affidavits of Isabella S. Marshall, and of Thomas A. Porter, who sued as her next friend, in which they made oath respectively, that they have not, nor ever had, the deed of assignment made by Miller, nor the books of account &c., and that they do not know where the same now are, unless they are in the custody or power of the defendants or one of them.

*Wells* and *Boise* supported the demurrer. The plaintiff Campbell being a party to the assignment from Miller and

being the executor of the will of John Marshall, the law presumes that he has the custody of the assignment and of Marshall's papers, and it was therefore incumbent on the plaintiffs to file his affidavit that they were not in his hands. Isabella S. Marshall, the other plaintiff, is an infant and not a party to the assignment, and the affidavit made by her is of no avail.

The bill cannot be sustained under *St.* 1817, *c.* 87, giving this Court equity jurisdiction " in cases of trust arising under deeds, wills or in the settlement of estates."

It will hardly be contended that there is a trust arisin under a deed. Neither is there a trust arising under a will, for there is no will of which the Court can take cognizance, the will of Henry Sheldon not having been proved or filed in this State, pursuant to *St.* 1785, *c.* 12 ; nor a trust arising in the settlement of an estate, for no executor or administrator has been appointed here, nor any estate been settled. *Gibbens* v. *Peeler,* 8 Pick. 254. Further, by a " trust arising in the settlement of estates," is meant an express trust, created by written contract. *Given* v. *Simpson,* 5 Greenl. 303.

In order to sustain the bill, the plaintiffs must show that Thomas Sheldon represents Henry in this State ; that the will of Henry has been proved or filed here, and that administration has here been granted to Thomas. An administrator appointed in one State, is not by virtue of that appointment recognised as such in another State. *Goodwin* v. *Jones,* 3 Mass. R. 514 ; *Borden* v. *Borden,* 5 Mass. R. 67 ; *Cutter* v. *Davenport,* 1 Pick. 81 ; *Thompson* v. *Wilson,* 2 N. Hamp. R. 291 ; *Tourton* v. *Flower,* 3 P. Wms. 369 ; *Morrell* v. *Dickey,* 1 Johns. Ch. R. 153 ; *Williams* v. *Storrs,* 6 Johns. Ch. R. 353 ; *Doolittle* v. *Lewis,* 7 Johns. Ch. R. 45 ; *Riley* v. *Riley,* 3 Day, 74 ; *Kerr* v. *Moon,* 9 Wheat. 565 ; *Dixon* v. *Ramsay,* 3 Cranch, 319.

The Court will not sustain the bill, because they have no power to make a distribution of the personal property of Henry Sheldon. Administration granted here would be merely ancillary, and the administrator would have authority

only to collect assets existing here, and pay debts due to our own citizens, and the assets received here and not applied to the payment of such debts, would be remitted to South Carolina, to be distributed according to the *lex domicilii*. There being however no effects here to be collected, there would be no foundation for a grant of ancillary administration. 2 Kent's Com. 344 ; *Richards* v. *Dutch*, 8 Mass. R. 506 ; *Stevens* v. *Gaylord*, 11 Mass. R. 256 ; *Dawes* v. *Boylston*, 9 Mass. R. 337 ; *Harvey* v. *Richards*, 1 Mason, 381. A distribution has already been made in South Carolina, and the proceedings of the executor have been sanctioned by the court of ordinary, and the property become vested in the respective distributees, according to the laws of that State. Even if those proceedings had taken place in the court of probate here, this Court, as a court of chancery, could not revise them. *Jenison* v. *Hapgood*, 7 Pick. 1.

But if ancillary administration had been granted here, these plaintiffs could not maintain their bill, because they are not creditors within this State, and no effects have been collected here. One of the plaintiffs lives in South Carolina, and the other in New York. They should at least have sought their remedy in the courts of the United States. *Richards* v. *Dutch*, 8 Mass. R. 515 ; *Dawes* v. *Boylston*, 9 Mass. R. 337 ; *Dawes* v. *Head*, 3 Pick. 128.

The defendants, other than Thomas Sheldon, cannot be held liable in this suit, because the plaintiffs have not pursued their remedy at law against Thomas. They ought to have obtained a judgment against him as executor of Henry ; it is not sufficient for them to say that he is indebted to them and insolvent. *Brinkerhoff* v. *Brown*, 4 Johns. Ch. R. 671 ; *Williams* v. *Brown*, ibid. 682 ; *M'Dermutt* v. *Strong*, ibid. 687 ; *Smith* v. *Caswell*, 2 Hayw. (N. Car.) 285 ; *Angell* v. *Draper*, 1 Vern. 399 ; *Hendricks* v. *Robinson*, 2 Johns. Ch. R. 290 ; *Shirley* v. *Watts*, 3 Atk. 200.

The plaintiffs allege that they have no remedy at law. But they show that they once had such a remedy in South Carolina : and if they have lost it by their own negligence,

a court of equity will not grant them relief. *Penny* v.
*Martin*, 4 Johns. Ch. R. 567.

*Dewey* and *G. Bliss* on the other side. With respect
to the objection, that the plaintiffs have not filed the affi-
davit of Campbell, the demurrer misapprehends the nature
of the bill. The object of the bill is not a discovery, but
relief.

But if this were a bill for discovery as well as relief, still
such affidavit would not be necessary. The reason why an
affidavit is required under the English chancery practice,
is because the bill seeks to transfer the cognizance of the
case from a court of law to a court of equity ; which will
not be permitted upon a mere allegation in the bill, of the
loss of a deed. Here the reason does not apply. The
foundation of this bill is a trust, which is cognizable only,
in a court of equity. Coop. Eq. Pl. 61 ; *Dormer* v. *For-
tescue*, 3 Atk. 132 ; *Whitchurch* v. *Golding*, 2 P. Wms
541 ; 1 Harr. Ch. Pr. 142, 144, 145 ; *Laight* v. *Morgan*,
2 Caines's Cas. in Err. 345 ; Mitf. Pl. 43.

Unless the plaintiffs can maintain this suit, they have no
remedy elsewhere, in law or in equity. No process can
be sustained in South Carolina, for Thomas Sheldon gave
no bond there for the faithful performance of his trust as
executor, and the assets there collected have been brought
into this State. There may be jurisdiction in form, in
South Carolina, but neither of the defendants being in that
State, a judgment recovered there would have no validity
in Massachusetts. It is said that the will of Henry Shel-
don has not been filed and recorded in this State ; but if
it had been, and administration had thereupon been granted,
we should have been met with the objection, that there
were no assets here to be collected and that the adminis-
trator is responsible only for assets found here. *Boston* v.
*Boylston*, 2 Mass. R. 384.

This suit is instituted under *St.* 1817, *c.* 87, on the
ground of a trust arising in the settlement of an estate.
Henry Sheldon became a trustee by virtue of the deed to
him from Miller, and Thomas Sheldon as his executor
succeeded to the same trust ; and the plaintiffs have no

other remedy than a bill in equity. It is true that Thomas has not been authorized by any judicial proceeding, to represent Henry in this State. But the plaintiffs cannot compel him to take out letters of administration here, or to file a copy of the will. Nor if they should take out letters of administration themselves, would it be of any avail, for it would be said that their administration was ancillary, and that they must account to the executor in South Carolina. In the case of *Goodwin* v. *Jones*, the action was brought *by*, not *against* the foreign administrator ; and that is an important distinction. In the case of *Borden* v. *Borden*, it is merely a dictum that a foreign administrator may not be sued here, to enable a creditor to levy on the real estate of the intestate. The question now before the Court is, how far an executor appointed in one State, is liable to respond in another State for personal property, and in a court of equity. The case of *Dowdale*, 6.Co. 46 *b*, in which an administrator appointed in Ireland was held liable to an action in England, has been repeatedly recognised in the Court of Chancery in England and in the Supreme Court of the United States ; and it is an established principle, that where a court of chancery has control of the person of a trustee, it will enforce its jurisdiction, even though the subject of the suit should be real estate situate within a different jurisdiction. *Arglasse* v. *Muschamp*, 1 Vern. 75 ; *Kildare* v. *Eustace*, 1 Vern. 419 ; *Toller* v *Carteret*, 2 Vern. 494 ; *Penn* v. *Ld. Baltimore*, 1 Ves. sen. 444 ; *Foster* v. *Vassall*, 3 Atk. 587 ; *Cranstown* v. *Johnston*, 3 Ves. 170 ; *Derby* v. *Athol*, 1 Ves. sen. 202 ; *Attorney- General* v. *Stewart*, 2 Meriv. 143 ; 2 Swanst. 323. It will be found that the authorities cited go farther than is necessary for the present case, this being merely a claim for personal assets which are here, and the remedy may be pursued not only *in personam*, but also against the property. The decisions in the courts of the United States and of some of the States, are equally strong. *Milligan* v. *Milledge*, 3 Cranch, 220 ; *Massie* v. *Watts*, 6 Cranch, 148 ; *Bryan* v. *M'Gee*, 2 Wash. C. C. R. 337 ; *Harvey* v. *Richards*, 1 Mason, 409 : *Swearingen* v. *Pendleton*, 4 Serg.

Campbell
*v.*
Sheldon.

2 *

Campbell
v.
Sheldon.

& Rawl. 389 ; *Evans* v. *Tatem,* 9 Serg. & Rawl. 252 , *Campbell* v. *Tousey,* 7 Cowen, 64 ; *Ward* v. *Arredondo,* 1 Hopkins, 213.

It is said that the bill cannot be maintained against any of the defendants except Thomas Sheldon, because no judgment has been recovered against him as executor or administrator.   But it is impossible to obtain such a judgment against him in this State, unless he will voluntarily take out letters of administration here, and a judgment obtained in South Carolina would be of no avail here, there being neither person nor property in that State, against which an action could proceed.   The liability of Thomas Sheldon as executor, and the extent of it, may be ascertained in this suit, and the other defendants will not be prejudiced by such a determination of those points, any more than if they had been determined in a previous suit against Thomas alone.

*Wells,* in reply, said that in some of the cases cited for the plaintiffs, the foreign administrator admitted the jurisdiction by his mode of pleading, or the suit was sustained by virtue of some local law, or was instituted in a court of general equity powers, with jurisdiction over citizens of different States.

The opinion of the Court as to one part of the case, was delivered at May term 1832, in Hampden, by

*May Term*
*1832,*
*in Hampden.*

SHAW C. J.   The first cause of demurrer presented in the argument, is that John Campbell, one of the plaintiffs, and who is stated to have been a co-trustee with Henry Sheldon, in the deed of trust from Ezra L. Miller, has not made his affidavit, setting forth that the deed is not in his possession or power, and that he does not know where it is, unless it is in the hands of the defendants, or some one of them.   Such an affidavit has been made by Isabella S. Marshall, the other plaintiff, and by Samuel A. Porter, who sues as her next friend ; but it is insisted on, as good cause of demurrer, that such affidavit has not been filed by Campbell.

If such an affidavit be requisite, it would be especially so, from Campbell, who was one of the grantees in the deed

in question, and therefore might, equally with his co-trustee, be presumed to have the custody of the document.

But we are satisfied that this is not a case, in which such an affidavit, by the rules of chancery practice, can be required.

One of the known heads of general chancery jurisdiction, is that of " accident and mistake," under which the court will sustain jurisdiction in equity, where a party claims under a deed or bond, alleged to be lost. Formerly it was held, that at law profert could not be dispensed with, and therefore the party claiming under a lost deed could have no remedy at law. Equity therefore interposed to aid a discovery, to supply the want of such lost deed ; and even now, though it has been decided that at law a deed alleged to have been lost by time or accident, may be pleaded without profert, still equity possesses a jurisdiction in such cases, because it had been established and exercised under the former state of the law, and has since been retained, both upon the ground of usage, and because, in many cases, where the rights and liabilities of sureties, and other derivative and collateral rights and obligations of different parties among each other, are in question, equity can more effectually determine the suitable indemnities to be given, and adjust the relative rights of all parties, and bind the whole by a decree. But it being a rule in chancery, that when equity has jurisdiction for the purpose of discovery, it will also entertain jurisdiction for purposes of relief, if prayed for, and may therefore proceed to grant relief, although, but for the loss of the deed, the complainant would have a plain and complete remedy at law, if such party, by merely alleging the loss of his deed, without more, could give the court jurisdiction and pray relief, he could at his own pleasure change the forum, and go into equity, upon a case purely legal. To guard against this consequence the court require an affidavit of the actual loss of the deed, not so much as proof of the fact, because that is to be obtained in the ordinary way by the answer of the defendant or other proof, but to lay a ground for the jurisdiction of the court, where otherwise there would be no such ground. It manifestly therefore applies

to a case where the loss of the deed is relied on as the sole ground of chancery jurisdiction ; and cannot extend to a case, where a fraud, trust or other known ground of chancery jurisdiction is relied on, and a deed is sought to be disclosed, as any other fact material to the case is sought to be disclosed, by the answer of the defendant. This view is abundantly supported by authorities.

"A bare suggestion in a bill is not sufficient to support the jurisdiction, the court requiring a degree of proof of the circumstance on which it is sought to transfer the jurisdiction from a court of law to a court of equity." The want of such proof in such case is cause of demurrer. 1 Madd. Pr. 27 ; *E. I. Co.* v. *Boddam,* 9 Ves. 466. Therefore, when no relief is sought, but discovery only, there is no need of an affidavit, simply because in such case there can be no attempt to transfer the case from a court of law to a court of equity by alleging the loss of the deed. *Whitchurch* v. *Golding,* 2 P. Wms. 541.

Here the rule requiring an affidavit, cannot apply, because the Court, under the limited equity jurisdiction given by statute, has no jurisdiction in cases of loss of deeds, and if no other ground were alleged in this bill, it must be dismissed, with or without an affidavit, for want of jurisdiction. But here the ground of equity jurisdiction set forth, is a trust created by deed, under which Henry Sheldon received the property, in question, which has devolved upon the defendants as his representatives, they having received the property sub ject to the same trust. If the jurisdiction cannot be maintained upon this ground, it cannot be maintained at all; and in supporting their case, upon the ground of trust, the plaintiffs have a right to a discovery and disclosure of deeds, as of any other facts or evidence in the knowledge or power of the defendants, under their oaths, and no affidavit is necessary.

The opinion of the Court upon other points in the case, was delivered at this term by

WILDE J.    This is a bill for compelling the performance of a trust arising under the last will and testament of Henry Sheldon, and a deed to him and John Campbell, one of the

plaintiffs, by which certain valuable property and effects were conveyed to them in trust for the use and benefit of the other plaintiff, Isabella S. Marshall. The bill charges, that after the execution of the deed of trust, Henry Sheldon received, collected and disposed of the whole of the trust property and effects, and appropriated the same to his own use; that he afterwards made his last will and testament, in due form of law, appointing Thomas Sheldon and Augustus Collins executors thereof, and afterwards died possessed of a large estate, which has since come into the hands of Thomas Sheldon, who accepted the trust, and caused the will to be proved before the ordinary in the district of Charleston and State of South Carolina, where Henry had his domicil at the time of his decease : and that letters of administration were granted by the ordinary to him as sole executor of the will, Augustus Collins having declined the trust. The bill proceeds to set forth the proceedings in the court in Charleston, averring that Thomas Sheldon returned two inventories of the estate of the deceased, and settled an account of administration in the probate court, but that he did not account for all the assets which came into his hands ; and that he has since withdrawn the same from the State of South Carolina to this commonwealth, where Thomas Sheldon has always had his residence. It is further alleged in the bill, that Thomas gave no bond nor security in the probate court in Charleston, to account for the estate and effects of the deceased, and that the plaintiffs have no remedy in the State of South Carolina to compel the performance of the trust, which they aver has never been fully performed by Thomas, although he has received sufficient assets to enable him to discharge all just claims upon the estate of Henry.

It is furthermore stated in the bill, that Thomas Sheldon is insolvent, and has paid over to the other defendants the legacies given in and by the last will of Henry, in full, a part of which they ought now to refund as proceeds of the sale of property held by Henry in trust for the plaintiffs.

The defendants demur to the bill ; and the question is, whether the Court has jurisdiction of the case.

Campbell<br>*v.*<br>Sheldon.

Campbell
v.
Sheldon.

To maintain the affirmative, the plaintiffs must show that the defendants hold property in trust arising under the will of Henry Sheldon, or in the settlement of his estate.

Of the will we can take no cognizance, since there has been no probate of it in this State ; nor has any copy of it been filed and recorded, as required by the statute of 1785, *c.* 12. Nor can Thomas Sheldon be recognised as the rightful executor here, before he complies with the provisions of the statute.

But it has been argued that he may be charged as executor *de son tort*, and several authorities have been cited to establish this position.

In *Dowdale's case*, 6 Co. 46, it was held that an administrator appointed in Ireland, and who received assets there, was liable to a suit in England. So in the case of *Evans* v. *Tatem*, 9 Serg. & Rawle, 258, it was decided, that if a person administers in one State and receives assets there, and afterwards removes into another State, he would be liable to the suits of creditors in the latter State. And the same principle is laid down in *Campbell* v. *Tousey*, 7 Cowen, 64. But although a person may be liable in such cases to be charged as executor *de son tort*, it does not follow that the creditors can through such an executor charge or bind the estate of the deceased. An executor *de son tort* has no legal control over the personal estate ; by his unlawful intermeddling he becomes liable to creditors, yet he cannot convey the personal property so as to enable the purchaser to hold it against the rightful executor, and to his prejudice. He can make no legal settlement of the estate, without first taking out letters of administration. He can obtain no license for the sale of the real estate, nor can he represent the estate insolvent for the purpose of causing distribution to be made among the creditors.

In the case of *Mitchell* v. *Lunt*, 4 Mass. R. 654, it was decided, that a creditor, who had recovered judgment against an executor *de son tort*, could not levy his execution on the real estate of the deceased ; and the same decision was made in *Borden* v. *Borden*, 5 Mass. R. 67. It was not decided in these cases that the personal estate could not be

taken on execution; but as the real estate of the deceased, by our laws, is made liable to be levied upon by executions on judgments against executors and administrators, it is not easy to perceive any substantial difference in this respect between the real and the personal property. The case of *Humphreys et ux.* v. *Humphreys*, 3 P.Wms. 348, was a bill in equity for the recovery of a legacy given by the will of Colonel Lancashire and for an account of his estate. The defendant had married the widow of the deceased, and became possessed of his effects, but had not taken out letters of administration, and for this reason the bill was dismissed, the chancellor holding that no account could be taken of the personal estate of the deceased, without making his executor or administrator a party.

The same principle is laid down by Chief Justice *Tilghman* in the case of William Huff's estate on the appeal of Peebles, 15 Serg. & Rawle, 41.

And according to the case of the *Selectmen of Boston* v. *Boylston*, 2 Mass. R. 384, Thomas Sheldon would not be obliged to account here for assets received in South Carolina, although he had filed a copy of the will and taken out letters of administration in this State in pursuance of the statute. But certainly we cannot hold him to account here for his proceedings in South Carolina, upon the facts stated in the bill. We could not revise, correct or set aside those proceedings, if we had jurisdiction. It is however clear, we think, that as a court of equity we have no jurisdiction. The statute relating to trusts arising in the settlement of estates (*St.* 1817, *c.* 87,) must be confined to such trusts as arise in the settlement of estates by rightful executors or administrators. In the case of *Gibbons* v. *Peeler*, 8 Pick. 256, Chief Justice *Parker* says, "We can see no reasonable exposition of the term, ('in the settlement of estates,') unless it was intended to reach those implied trusts which may be charged upon executors or administrators by reason of the duties or neglect of duties, which devolve upon them in consequence of their appointment to and acceptance of such offices : possibly also heirs may be charged with trusts within this description, in virtue of the settlement of estates upon one or more of them by a decree of

Campbell<br>*v.*<br>Sheldon.

the judge of probate, where the estate does not admit of an equal division."

But an executor *de son tort*, if Thomas Sheldon can be considered in that character, cannot settle the estate of the deceased ; he cannot sue for and collect the debts due to the estate, nor make any valid disposition of the goods and effects ; so that no trust can arise by any acts and doings of his in this commonwealth. · Nor can he be considered as the personal representative of the deceased in this commonwealth, without filing a copy of the will and taking out letters of administration according to the directions of the statute.   So that whether he may be sued or not as executor *de son tort*, in an action at law, it seems to be clear that he is not liable in a suit in equity.   The trust estate is not vested in him, nor does any trust devolve on him in consequence of his unauthorized intermeddling.

As to the other defendants, it is manifest that they cannot be responsible, without showing they are liable to contribution, and this cannot be shown without producing the will of Henry Sheldon and making a final settlement of his estate ; which this Court, as the facts appear, is not competent to make.

*Bill dismissed*